ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

FEB 10 2011

CLERK, U.S DISTRICT COURT
By_____

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

MATTHEW TRENT PERGREM, §
   Plaintiff. §
§
VS. § ACTION NO. 4:10-CV-141-Y
§
MICHAEL J. ASTRUE, §
COMMISSIONER OF SOCIAL §
SECURITY, §
   Defendant. §

### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE
### AND
### NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

### FINDINGS AND CONCLUSIONS

### I. STATEMENT OF THE CASE

The plaintiff, Matthew Trent Pergrem ("Pergrem"), filed an application for Title II disability insurance benefits ("DIB") on February 13, 2006, alleging a disability onset date of January 5, 2005.[1] (Transcript ("Tr.") 11, 79-81.) After his application was denied initially and on reconsideration, Pergrem timely requested a hearing before an administrative law judge ("ALJ"). A hearing was held in Fort Worth, Texas before ALJ William H. Helsper on April 16, 2008. (Tr. 11, 22-44.)

In his application, Pergrem claimed disability due to a number of impairments, including chronic demyelinating inflammatory peripheral neuropathy, attention deficit disorder, dyslexia dysnemkineidesia, dyscalculia, dysgraphia, depression, fallen arches, hammer toes, numbness, and tingling. (Tr. 94.) On June 24, 2008, the ALJ issued a decision finding that he was not disabled.

---

[1] The ALJ found that Pergrem met the disability insured status requirements of the Act on January 5, 2005, his alleged onset date, and that he continued to meet them through the date of the ALJ's decision. (Tr. 15, citing 20 C.F.R. § 404.101 *et seq.*)

(Tr. 9-18.) On December 18, 2009, the Appeals Council denied Pergrem's request for review. (Tr. 2-4.) Pergrem subsequently filed the instant action in federal court on March 1, 2010. (doc. #1.)

## II. STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be presently engaging in substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972.

Second, the claimant must have an impairment or combination of impairments that is severe. An impairment or combination of impairments is not severe if it has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). At the third step, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the appendix to the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show that he is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Crowley*, 197 F.3d at 198; *see also Greenspan v.*

*Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). If the Commissioner meets this burden, the claimant must then prove that he cannot, in fact, perform the work suggested. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). A denial of benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000). The Court must, however, carefully scrutinize the record to determine if the evidence is present.

### III. ISSUE

Pergrem presents the following issue:

> Whether the ALJ applied the correct legal standards and whether substantial evidence supports the ALJ's step five determination that Pergrem could perform other work that exists in significant numbers in the national economy.[2]

(Plaintiff's Brief ("Pl. Br.") at 1.)

### IV. ADMINISTRATIVE RECORD

#### A. **Factual Background**

At the time of his hearing before the ALJ, Pergrem was 28 years old with a high school education and past relevant jobs as an insurance clerk and a receptionist. (Tr. 25, 41.) Pergrem did not engage in substantial gainful activity from January 5, 2005 through the date of the ALJ's decision. (Tr. 15, citing 20 C.F.R. §§ 404.1510 and 404.1572.)

---

[2] Pergrem raises the following specific issues subsumed within the broader issue: (1) whether the ALJ properly evaluated the side effects of Pergrem's medications and (2) whether the ALJ properly evaluated Pergrem's credibility. (Pl. Br. at 1).

## B. Administrative Record

At his hearing before the ALJ, Pergrem was represented by an attorney and testified on his own behalf. (Tr. 24.) An impartial vocational expert ("VE"), Carol Bennett, also testified. (*Id.*) The ALJ asked the VE to take a hypothetical individual 28 years of age, with a high school education and Pergrem's past relevant work history and the RFC for sedentary work, with limitations including no overhead reaching, the freedom to occasionally change positions at the worksite from sitting to standing, no interaction with the public, no temperature extremes, and no fine fingering, and state whether such a person could perform either of Pergrem's past jobs. (Tr. 42.) The VE responded no. (*Id.*) The VE further testified that such a person would not have gained any transferable skills that might work within his RFC. (*Id.*) Finally, the ALJ asked the VE whether there were any jobs within the world of unskilled sedentary work that such a person could perform that would take into account the individual's non-exertional limitations. (*Id.*) The VE responded that there would be a "reduced number of inspectors, unskilled at sedentary; at least 1,500 in Texas and at least 30,000 in the United States," but that she could not otherwise name any jobs with those restrictions. (*Id.*)

## C. The ALJ's Decision

In making his decision, the ALJ performed the five-step sequential evaluation process for determining whether a person is disabled. (Tr. 11-17.) At step one, the ALJ found that Pergrem met the disability insured status requirements of the Social Security Act through the date of his decision. (Tr. 15.) He also found that he had not engaged in substantial gainful activity since January 5, 2005, his alleged onset date. (*Id.*, citing 20 C.F.R. § 404.1510 and 404.1572.)

At step two, the ALJ determined that Pergrem had severe peripheral neuropathy. (*Id.*) The ALJ continued to step three, finding that Pergrem did not have an impairment or combination of impairments that met or equaled a listing at step three of the disability analysis. (*Id.*, citing 20 C.F.R. Part 404, Subpart P, Appendix 1.) The ALJ then found that Pergrem's testimony concerning his functional limitations was not reasonably supported by the objective clinical findings. (Tr. 16.)

Next, the ALJ found that Pergrem retained the RFC for sedentary level work, but that his RFC for the full range of sedentary work was reduced by the following restrictions: no overhead reaching; no exposure to temperature extremes; no fine-fingering; little, if any, interaction with the public while in the performance of job duties; and the ability to change positions from seated to standing. (*Id.*, citing 20 C.F.R. § 404.1545.)

At step four, the ALJ determined that Pergrem was unable to perform any of his past relevant work. (*Id.*) Then at step five the ALJ found that, given Pergrem's age,[3] education, work experience,[4] and RFC, there were jobs existing in significant numbers in the national economy that he could perform. (*Id.*, citing 20 C.F.R. § 404.1568, 404.1569, and 404.1569a.) Ultimately, the ALJ concluded that even though Pergrem's non-exertional limitations did not allow him to perform the full range of sedentary work, there were a significant number of jobs in the national economy that he could perform, including quality control inspector with up to 30,000 jobs in the national economy and 1,500 in Texas. (Tr. 16, citing 20 C.F.R. § 404.1569 and Rule 201.27, Table No. 1, Part 404, Subpart P., App. 2.)

## V. DISCUSSION

Pergrem's sole issue on appeal is whether the ALJ applied the correct legal standards and whether substantial evidence supports the ALJ's step five determination that Pergrem could perform other work that exists in significant numbers in the national economy. (Pl. Br. at 1, 9-15.) Specifically, Pergrem complains that (1) the ALJ failed to properly evaluate the side effects of Pergrem's medications, and (2) the ALJ failed to properly evaluate Pergrem's credibility.

---

[3] Pergrem is defined as a younger person for purposes of the Act. (Tr. 16, citing 20 C.F.R. § 404.1563.)

[4] The ALJ determined that Pergrem had not acquired any work skills transferable to other skilled or semi-skilled occupations. (Tr. 16, citing 20 C.F.R. § 404.1568.)

## A. Whether the ALJ properly evaluated the side effects of Pergrem's medications

Pergrem first complains that the ALJ improperly failed to consider the side effects of Pergrem's medications in making his step five determination, including the side effect of "grogginess." (Pl. Br. at 10-11.) In his analysis, the ALJ specifically discussed Pergrem's complaints of side effects stemming from his medications. (Tr. 14.) The ALJ noted that Pergrem had reported problems with being tired due to his medications, but that there was no evidence in the record reflecting that Pergrem had ever reported such problems to his doctors. (*Id.*) The ALJ commented that although Pergrem had side effects from weaning off of Cymbalta, that "the mere presence of adverse side-effects does not mean an inability to work on a sustained basis." (Tr. 14, 390, 404.) Moreover, the ALJ noted that Pergrem "did not feel the need to visit his doctors on anything approaching a regular basis" since his onset date of January 5, 2005, and that he had a year between visits, with the only communications being Pergrem's requests for refills of his medications. (Tr. 14.)

Pergrem argues that the ALJ failed to consider the evidence in the record with respect to the alleged "grogginess" he experienced as a side effect of his medications. (Pl. Br. at 11.) But the record reflects that Pergrem did not report this side effect to any physician. (Tr. 14, 312, 314, 316, 336-38, 353-54, 393.) The only time the record reflects that Pergrem complained of side effects was when he reported side effects stemming from his efforts to wean himself from Cymbalta. (Tr. 13, 404, 390.)

It is well-established in this Circuit that "subjective complaints must be corroborated at least in part by objective medical testimony." *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989), citing *Harrell v. Bowen*, 862 F.2d 471, 481 (5th Cir.1988). There is no evidence in the record corroborating Pergrem's allegations of recurring, disabling "grogginess" other than his own subjective complaints at his hearing before the ALJ and the internet literature Pergrem proffered after his hearing. (Tr. 37, 145-89.) The Court, therefore, finds that the ALJ properly rejected Pergrem's allegations regarding the side effects of his medications.

## B. Whether the ALJ properly evaluated Pergrem's credibility

Pergrem next argues that the ALJ failed to properly evaluate his credibility. (Pl. Br. at 13-15.) An ALJ is not required to give subjective evidence precedence over objective evidence. *See Hollis v. Bowen*, 837 F.2d 1378, 1385 (5th Cir. 1988) (citations omitted). Rather, the ALJ's evaluation of the credibility of an individual's complaints of pain is used to resolve conflicts between the subjective evidence and the medical evidence. *Id.* The record is clear that the ALJ considered a number of factors, including Pergrem's daily activities, his course of treatment, and his testimony at his disability hearing in determining that Pergrem's subjective complaints were not credible to the extent he claimed. (Tr. 12-15.) Thus, the ALJ clearly indicated the credibility choices he made and his basis for making those choices. *See Hollis*, 837 F.2d at 1385; *see also* 20 C.F.R. § 404.1529 (ALJ will consider the extent to which a claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence); Social Security Ruling 96-7p, 1996 WL 374186, *3 (July 2, 1996) (discussing factors used in credibility determination).

Pergrem argues that the ALJ only considered Pergrem's lack of medical treatment before discrediting his subjective complaints. (Pl. Br. at 13.) It is clear from the ALJ's decision, however, that he reviewed all of the evidence before analyzing Pergrem's case. (Tr. 12-15.) This includes the ALJ's discussion of Pergrem's motor skills, normal strength in his arms, strength in his legs, and examination findings. (Tr. 13-14, 201, 334, 393.) Additionally, the record reflects that both Pergrem's medications and his knee braces improved his condition. (Tr. 13, 310, 312-13, 316, 336, 405.) Impairments that can reasonably be remedied or well-controlled by medication or medical treatment are not disabling. *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988).

Moreover, the ALJ noted that Pergrem's complaints to his physicians were not consistent with his allegations at his hearing. (Tr. 13.) Specifically, while Pergrem merely mentioned stiff and achy leg pain to his doctors, he testified at his hearing that he was incapable of standing for any length of time, that he could not walk far, and that he could not sit for more than 15 minutes at a

time. (Tr. 14, 35-36.) The ALJ also noted that Pergrem had infrequent treatment visits, sometimes a year apart. (Tr. 14, 390-400, 404.)

It is apparent that the ALJ considered the record as a whole and concluded that Pergrem was capable of performing sustained work activity. (Tr. 13-15.) He did not simply disregard Pergrem's impairments, but rather placed significant limitations on Pergrem's ability to work, limiting him to less than the full range of sedentary work. (Tr. 15-16.) Substantial evidence supports the ALJ's step five determination that Pergrem could perform other work that exists in significant numbers in the national economy. (Tr. 15-16.) Pergrem has failed to meet his burden of proving that he could not perform such work. *See Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). Substantial evidence supports the ALJ's ultimate determination that Pergrem was not disabled.

## RECOMMENDATION

For the foregoing reasons, the Court recommends that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document. Thus, the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation is **February 24, 2011**. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking

on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until **February 24, 2011** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

**SO ORDERED.**
**February 10, 2011**

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/cak